```
STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )
```

   Ira Judelson, being duly sworn deposes and says:

 1. I am forty nine years old and I graduated from Iona College.

 2. I am a New York State licensed Bail Bond agent with offices located at 299 Broadway, Suite 207, New York, New York 10007, tel: 212-964-2400.

 3. The insurance company that underwrites the bonds I post is, International Fidelity Insurance Company, with offices located at One Newark Center, Newark, New Jersey 07102.

 4. I have been a Bail Bond agent since 1998. I have written and been involved in over ten thousand bonds in my 17 years in business.

 5. As a bail bondsman I go to the county in which the bond has been set by the court and swear before the Judge to the Undertaking of Bail and Bail Affidavit.

 6. I have been involved in over 1000 Surety hearings, and testified in over 75 to 100 Surety hearings, known as Nebia Hearing.

 7. A Surety, Nebia is set by the court to determine the sufficiency of the money, property and People (indemnitor's) backing the bond. The indemnitor's must be employed and provide paystubs and income tax returns, the money given must also have an accounting(bank statements, proof of deposits)the property must have Deed, Appraisal, Title search, and last Mortgage statement with proof of where the monies used to pay the

mortgage came from.

8. The Court will then make a determination of sufficiency on what was provided and the defendant will be released or remain in jail until suitable indemnitor's and property can be provided.

9. I first got a phone call from Karine Bogoraz in January 2012. We talked on the phone for about an hour, she talked to me about the case. She told me that all other bond companies would not help or write the bond. She stated that she had been referred to me and that she would like to e-mail me some documents to look at. A couple of days later over a 100 pages of documents were received in my office, I decided to find out more on the case and do some research. I found out a lot about the case. Mr. Bogoraz had been charged with fraud, and had jumped bail on a previous DWI case and went to Ukraine, after, a period of time Mr. Bogoraz was caught in a private plane in Puerto Rico. Also in my research I found out that he was found guilty in the 2000 for the same type of case he was being indicted on. I also discovered that his family was dealing with numerous Bonding Companies from Florida to Maryland to New York. After not hearing from Karine for a while I then received a call from her. She had been dealing with all the other Companies to see if they could post the bond and working with her Attorney to get the Bond lowered. By the time she contacted me she was already on her Third Attorney.

10. Katrine Bogoraz and the defendant's mother just showed up to my office to discuss the posting of the bond. I took the meeting and sat with them for hours. I explained to them how the process of posting the bond would work, and what it would entail

15. I then asked her where the Premium money would come from and she stated that Mr. Bogoraz friends would pay it. I Then spoke to the Moldaver's who were going to pay the premium and explained that they would lose their fee. They agreed that the bond should be posted and that they understood.

16. We then on March 26, 2012 met with the indemnitor's at International Fidelity Insurance Co. in Newark, NJ. At that location all of the paper work was started for each person and my employee (Yousef Jabr) who also went to NJ filled out and notarized all the documents for the bond. It was a long day and very long process we were there for about six hours.

17. When all the documents had been executed I once again explained to Karine and Mr. and Mrs. Moldaver that once the bond was posted the Premium fee would be earned and it would not be returned even if the Defendant didn't get out of jail because the Surety Exam failed. "Please post the bond we know that everything is good it will be fine" That was what they stated at the time.

18. One of the documents that all the indemnitor's signed is called "application and indemnity for bail bond". Number nine (9) in this document reads as follows (The undersigned jointly and severally agree to pay the sum of $120,560.00 as a premium upon the execution of this bond or undertaking, together with any expense incurred in its execution. Like I explained from the beginning of the process of this case once the bond is executed (Judge Signs Bond) the premium is earned.

19. All of the paper work was getting processed and all of the properties put in order to prepare the bond package that would be presented to the court.

20. On March 28th 2012 I went before Honorable Judge Thomas J. Carroll, who signed the bond and signed the Bail Sufficiency Hearing Cut Slip. The cut slip notifies the department of corrections to produce defendant in court for purpose of the surety hearing being held.

21. The hearing was set and it turned into a fiasco. The Bogaraz and I spent hours and days going back and forth, I testified in court in front of Judge Firetog and the AG's office Arielle Singer and Nina Sas. The Attorney for Mr. Bogaraz was Lance Lazzaro (at that time). The appraisals that were given to me by Karine were found to have been inflated and new appraisal and title searches were requested, they also found that several statements that were made by the witnesses for the defendant testified falsely.

22. After the Judge reviewed all testimony and documents he denied the satisfaction of Sureties (indemnitor's). He found too many discrepancies. I understood that the AG's office was also looking into documents that were provided that were probably false. The Attorney stated he would go to the Appellate Division and he wanted his objection noted.

23. The family was not happy and hired a new Attorney to go to the Appellate Division and resubmit the bond. I met with the new Attorney, Arthur Aidala, for several hours to go over all information regarding the bond and surety hearing. While waiting for the decision of the appellate division, the family would show up to my office weekly to discuss what could be the outcome and what we could do depending on the outcome.

24. The family also wanted to discuss if they could do another bond if they were not successful, and wanted to start

getting together new indemnitor's and properties. They would show up and bring in documents for me to look over in hopes that we could then use them on the new bond if need be.

    25.   We finally got the decision from the Appellate division, they had denied the bond. The family was not happy and informed me that they were going to hire another lawyer.

    26.   We started the process of gathering all the information for the posting of a new bond.

    27.   I could have taken a fee for the posting of a new bond because legally a new bond has to be signed and executed again and the documents have to be given to the AG's office again.

    28.   I told them I would help them and not charge a fee and re-do the bond. They were so thankful and kept saying thank you, thank you.

    29.   After that meeting with them I had to start a new process of putting together a new packet and interview new people and reviewing new documents to prepare to post another bond.

    30.   When I got the packet together, I took it upon myself to go to Judge Chun's chambers to explain the bond I was going to post and the circumstance behind the bond. Judge Chun stated that I should get the bond packet together and he would take a look at it.

    31.   When the bond was ready to be posted I went to Judge Chun and he signed the new bond and once again new surety hearing was held and after hearing Judge Chun denied the bond again.

    32.   The family was devastated again, a few weeks later Karine Bogoraz and the mother of Defendant came in to my office

to do so. She at that meeting gave me more documents for my review which consisted of ownership and mortgage papers of close to eight properties. I briefly looked over the properties she gave me and some were good solid properties and others were underwater. She also provide me with about 12 names of people that she stated would indemnify themselves for me to conduct a background check (employment, credit history etc.)

11. At the end of that meeting I told her I would have my people do the necessary research to see if we could get a bond package together. I had all people and properties looked at and since am not Attorney or a real estate expert I had to give all the documents to my Insurance Companies Legal department to review and research all the documents that had been provided.

12. I contacted Karine and explained that after weeks of research from my team, they determined that some properties could be used and some would not. I explained that she would have to get more collateral. She informed me that what she had given is all she could come up with.

13. I explained to her what we would have to do and that all indemnitor's would have to be indemnified and all properties attached and that a Surety hearing would take place.

14. I explained that in order for everything to start I would have to post the bond in front of the Judge and it would start the process of the Surety hearing. I made sure she understood that it would not be guaranteed and once the bond was posted she would lose her Premium fee. Karine stated "I understand and I want to take a Shot." I repeated if you fail the Surety Hearing you will lose your money. "I want you to post the bond" that is what she said.

asking what our next step was. I said "you tell me, what you want to do?" About a month later they came in again and said can we get some money back, I know you did your job, but can you help us. I said my job was done and you knew this from the first bond and everything I have done to get this bonds done for you. My premium was earned when the bond was executed (signed by the Judge),I stated to them, "I did help you I did a second bond and didn't charge you". They said we know thank you, but please see if you can give us some money back think about it and let us know. I told them that I could not do anything for them that I had worked very hard and earned my fee.

33.  After a couple of days I received a phone call from a Lawyer saying he wanted me to return the premium money to him for legal fees I said that the Premium was earned and bond was posted and signed. He told me that he was going to talk to the Department of Insurance, so I gave him the number.

34.  After talking with Anna Lembersky, she asked the following questions 1- Was bond posted and signed by the Judge? (Yes) Was Surety Hearing heard? (Yes), then Mr. Judelson earned his Premium. That Attorney passed away and his son took over his cases. His son was a former DA., who came to see me in my office and sat with me for about an hour. He was a very nice man, In fact as a DA we did several Sureties together. He tried to work out a deal with me and the family, but the family said no to the negotiations.

35.  I then received a call from Mr. Moldaver asking me what was going on. I explained to him what I had already explained the very first time we spoke about the premium being earned when the bond was executed, he then stated "my gripe is


not with you, I will get my money from Karine that was the deal we ha". I said that I was sorry about how things worked out and he then said good-by and hung up.

36. I then Called the Department of Insurance and told them about the case, and they said they had spoken to two Attorney's and told them if a bond is executed and signed by a Judge the Bondsman is entitled to his Premium. I didn't hear from him again.

37. Months later from I got a letter from another Attorney and that is how I got to this point.

38. I also contacted the AG's office to explain to them what was going on and that Karine wanted the Premium back and had hired an Attorney, and they stated you did your job.

39. I swear that the contents of this affidavit are truthful.

_____
Ira Judelson, Bai Bon Agent

Sworn to before me this 12 day of January 2015

**THAYER SARSOUR**
Notary Public State of New York
No. 01SA8/51216
Qualified in Kings County
Commision Expires Aug. 14, 2018

_____
Notary Public